747 So.2d 133 (1999)
STATE of Louisiana, Appellee,
v.
Jerry WALKER, Jr., Appellant.
No. 32,342-KA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1999.
*136 Louisiana Appellate Project by Amy E. Ellender, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine Estopinal, Assistant District Attorney, Counsel for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
The defendant, Jerry Walker, Jr., appeals his conviction and sentence of life imprisonment for the crime of one count of possession of a Schedule II controlled dangerous substance ("CDS"), a violation of La. R.S. 40:967(C). The trial court imposed the life sentence after adjudicating the defendant a fourth felony offender. For the reasons set forth herein, we affirm the defendant's conviction, but we vacate his adjudication as a fourth felony offender and the sentence imposed by the trial court and remand for further proceedings.

FACTS
While patrolling the 1300 block of Oakdale Street in the Hollywood Heights area of Shreveport, Louisiana, Officer Mike Greber ("Officer Greber") of the Shreveport Police Department ("SPD") observed two individuals sitting in a small truck parked on private property next to a condemned house. The SPD had an "entering and remaining" letter from the property owner which granted SPD permission to enforce no trespassing on the property. Additionally, the area was considered an extremely high crime area noted for drug sales, drug use and prostitution. Officer Greber parked his vehicle so as to block the truck. He then approached the truck and told the occupants to exit. Neither individual complied. Officer Greber then drew his weapon, pointed it at the windshield of the truck between the two occupants, and again told them to exit the vehicle. The two individuals exited the vehicle, and Officer Greber told them to get on the ground. The individual who exited from the driver's side obeyed the command. Officer Greber recognized that individual, Royce Jones, from previous drug charges and traffic stops. Officer Greber recalled that Jones had sustained severe brain damage from injuries received when he was a victim of a robbery and knew Jones to be docile and nonviolent toward the police.
The defendant was the second occupant of the truck. Officer Greber did not recognize him. The defendant exited the truck with his pants down almost to his knees and with an object that appeared to be either a screwdriver or a crack pipe in his left hand. Officer Greber noticed a little flash fall to the ground as the defendant exited the vehicle. After a third command, the defendant got on the ground. Officer Greber approached the defendant and cuffed his right hand. The defendant then dropped a crack pipe from his left hand before that hand was cuffed. Officer Greber seized the crack pipe and placed the defendant in the patrol car after arresting him and reading his Miranda rights. In the meantime, Officer Michael Blackmon ("Officer Blackmon") had arrived and was assisting with Jones who had half a dime bag of marijuana in his underwear. Officer Blackmon observed the defendant holding a crack pipe in his left hand while on the ground prior to being cuffed. After placing the defendant in the patrol car, Officer Greber returned to the passenger side of the truck where the defendant had exited and found a dime bag containing a $10.00 rock of crack cocaine on the ground by the passenger's door of the truck.
*137 In addition to the crack pipe and the bag containing the rock of crack, a Marlboro Lights box containing marijuana was found on the dashboard of the truck. The defendant told Officer Greber that the marijuana was his but that the crack was not. The defendant also told Officer Greber that Jones had been masturbating him and offered to turn in to Officer Greber a "big dealer" if he did not arrest him for possessing the crack. When Officer Greber informed the defendant that he would have to speak to someone in the drug bureau about his offer, the defendant made threats against Officer Greber, his partner, and his family.
Meanwhile, Officer Blackmon assisted with Jones. Jones informed Officer Blackmon that he had been masturbating the defendant in exchange for the crack cocaine. Officer Blackmon explained at trial that prostitution in exchange for drugs is common in the area where the arrest occurred. According to Officer Blackmon, when a person with illegal narcotics enters a deal with another to perform a sexual act in exchange for the narcotics, the act is performed before the drugs are exchanged.
Both the crack pipe and the dime bag seized at the scene of the arrest were analyzed for drug content. At trial, Randall Robillard of the North Louisiana Crime Lab testified that the plastic dime bag contained cocaine and that the crack pipe contained cocaine residue.
Prior to trial, the defendant filed an untimely motion to suppress the evidence seized at the crime scene. The trial court deferred the motion to the merits of the case and subsequently denied the motion. The jury returned a verdict of guilty as charged of one count of possession of cocaine, a Schedule II CDS, in violation of La. R.S. 40:967(C). Thereafter, the state filed a habitual offender bill of information. The trial court then adjudicated the defendant to be a fourth felony offender and imposed the maximum sentence of life imprisonment without benefit. The defendant now appeals urging five assignments of error.

DISCUSSION

Sufficiency of the Evidence
The defendant argues that the evidence presented at trial was not sufficient to support his conviction for possession of cocaine. The defendant specifically argues that the evidence was not sufficient to establish that he knowingly and intentionally possessed cocaine.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2nd Cir.1992), writ denied, 605 So.2d 1089 (La.1992). The Jackson standard applies in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence claim must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2nd Cir.1988).
La. R.S. 40:967(C) provides, in pertinent part:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, *138 as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
Thus, to convict the defendant for possession of cocaine, the state must prove that the defendant was in possession of the CDS and that he knowingly or intentionally possessed the CDS.
Possession of a CDS may be established by showing that the defendant exercised either actual or constructive possession of the substance. State v. Keys, 29,369 (La.App. 2nd Cir. 5/7/97), 694 So.2d 1107, writ denied, 97-1497 (La.10/31/97), 703 So.2d 21; State v. Lias, 28,091 (La. App. 2nd Cir. 5/8/96), 674 So.2d 1044. "Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. State v. Keys, supra; State v. Perez, 569 So.2d 609 (La.App. 2nd Cir.1990), writ denied, 575 So.2d 365 (La.1991). "Constructive possession" means the object is subject to one's dominion and control and one has knowledge of its existence. State v. Alford, 323 So.2d 788 (La.1975); State v. Lias, supra.
Guilty knowledge is an essential element of the crime of possession of illegal drugs, and such knowledge may be inferred from the circumstances. State v. Lias, supra; State v. Riley, 587 So.2d 130 (La.App. 2nd Cir.1991). The determination of whether there is possession of cocaine sufficient to convict depends on the facts peculiar to each case. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Ferrell, 25,851 (La.App. 2nd Cir. 3/30/94), 634 So.2d 977.
The facts of this case show that both Officers Greber and Blackmon observed the defendant holding a crack pipe in his left hand. The crack pipe later tested positive for cocaine residue. Officer Greber also testified that he observed a small flash fall from the person of the defendant as he exited the vehicle. Officer Greber searched the area and retrieved the plastic dime bag from the ground by the passenger's side of the truck from which the defendant had exited. This plastic dime bag contained cocaine. In addition to the items seized, there was testimony that the incident occurred in a high crime area known for drug activity and prostitution. There was also testimony indicating that Officer Greber interrupted a drug transaction involving a sexual act. Statements made to that effect are strongly supported by Officer Greber's testimony that the defendant exited the vehicle with his pants down below his knees.
After hearing the evidence, the jury made a rational determination that the defendant was in possession of the cocaine found in the plastic dime bag and the cocaine residue found in the crack pipe and that the defendant knowingly possessed the cocaine. Viewing the evidence in the light most favorable to the prosecution, we find the evidence sufficient to prove every essential element of the crime beyond a reasonable doubt. Both the items seized and the circumstances present establish that the defendant knowingly and intentionally possessed the CDS. This assignment of error lacks merit.

Motion to Suppress
By this assignment of error, the defendant contends that the trial court erred in failing to suppress the crack cocaine seized near the passenger's side of the truck and the crack pipe found in his possession. The defendant argues that Officer Greber had no reasonable cause or suspicion to believe that a crime had been or was being committed when he approached the truck and that an investigatory stop was not justified under the circumstances.
The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. La. C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *139 State v. Fauria, 393 So.2d 688 (La.1981); State v. Taylor, 363 So.2d 699 (La.1978). The right to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Washington, 621 So.2d 114 (La. App. 2nd Cir.1993), writ denied, 626 So.2d 1177 (La.1993). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have "articulable knowledge" of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Rodriguez, 396 So.2d 1312 (La. 1981); State v. Washington, supra.
Whether an officer has reasonable suspicion to make an investigatory stop should be judged under the totality of the circumstances, in light of the officer's experience, training, and common sense. The officer's experience may be considered in determining whether his inferences from the facts at hand were reasonable. State v. Leary, 627 So.2d 777 (La.App. 2nd Cir.1993), writ denied, 93-3187 (La.3/25/94), 635 So.2d 237; State v. Jackson, 26,138 (La.App. 2nd Cir. 8/17/94), 641 So.2d 1081.
When reviewing a trial court's ruling on a motion to suppress, based on findings of fact, great weight must be placed upon its determination, because the trial court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jackson, supra.
The evidence presented amply supports the trial court's determination that Officer Greber had reasonable cause to approach the truck and investigate the situation. Officer Greber had reasonable suspicion to believe that the defendant had committed a trespass because he was on private property for which the SPD had an "entering and remaining" letter from the property owner. The strength of this basis for conducting an investigatory stop was greatly increased by Officer Greber's suspicion that a drug transaction was likely occurring. Officer Greber had patrolled the area in question for one and a half years. Based on his experience, Officer Greber considered the area to be an extremely high crime area, particularly noted for drug transactions and prostitution. Officer Greber testified that nine out of ten times when a vehicle is backed onto that particular property the occupants are conducting a drug transaction. From the totality of circumstances, Officer Greber's suspicion that a drug transaction was occurring in the truck which was backed onto condemned private property was reasonable.
The plain view doctrine, an exception to the warrant requirement, applies where there is prior justification for the intrusion and where it is readily apparent without close inspection that the item is evidence or contraband. State v. Hill, 618 So.2d 568 (La.App. 2nd Cir.1993).
In this instance, Officer Greber had justification to conduct an investigatory stop. It was readily apparent without close inspection that the crack pipe and clear plastic baggy of crack cocaine were contraband. Therefore, we find that the warrantless search and seizure of this evidence was reasonable and that the trial court correctly denied the motion to suppress. This assignment of error lacks merit.

Plea Offer
In this assignment of error, the defendant contends that the trial court erred in not allowing him to accept a plea offer of ten years imprisonment at hard labor without benefit in exchange for his guilty plea. The plea offer was discussed prior to the start of trial, but the defendant declined the offer because it provided for imprisonment without benefit. The state commented that the offer would be revoked if not "taken today." After the *140 state rested its case, the defendant indicated that he would accept the plea offer. The trial court refused to allow the defendant to accept the offer on the basis that it had been withdrawn.
The defendant argues that the plea offer should be interpreted as a contract subject to the rules of obligations set forth in the Civil Code. See State v. Lewis, 539 So.2d 1199 (La.1989); State v. Rice, 26,478 (La. App. 2nd Cir. 12/7/94), 648 So.2d 426, writ denied, 95-0431 (La.6/16/95), 655 So.2d 340. Citing La. C.C. art.1928, which provides that an offer which specifies a period of time for acceptance is irrevocable during that time, the defendant argues that the offer was irrevocable when he agreed to take it during trial due to the state's comment that it would be revoked if not taken "today."
In State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144, the supreme court held that contractual principles may be helpful by analogy in deciding disputes involving plea agreements. The supreme court citing Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) noted that plea agreements are "constitutional contracts" and found that "the criminal defendant's constitutional right to fairness may be broader than his or her rights under contract laws." State v. Louis, supra. The Louis opinion and cases cited therein all involved the interpretation of agreements reached between the prosecuting authority and the defendant. In the instant case, no agreement was reached between the defendant and the state. A plea offer was made by the state and rejected by the defendant, who later after the close of the state's case attempted to take advantage of the previously rejected offer. Interpreting the plea offer to be irrevocable for the day could lead to the absurd result that the defendant could accept the plea offer after return of the jury verdict.
The trial court has discretion to reject a plea bargain, even if the parties are in complete agreement as to its terms. State v. Manchester, 545 So.2d 528 (La. 1989). Thus, regardless of whether the plea offer was still open when the defendant decided to accept it, we find that it was within the trial court's discretion to reject the plea bargain. This assignment of error lacks merit.

Habitual Offender Adjudication
By this assignment of error, the defendant contends that the trial court erred in adjudicating him a fourth felony offender because of alleged defects in his 1986 guilty plea for forgery and in his 1987 guilty plea for simple burglary, both entered in Desoto Parish. The defendant argues that the record is devoid of any indication that he understood or was aware of his right to a jury trial with respect to both the 1986 and 1987 guilty pleas. The defendant points out that the minutes of both guilty pleas reflect that he was advised of his right to trial, but do not reflect that he was advised of his right to a jury trial.
Louisiana's habitual offender law, La. R.S. 15:529.1(D)(1)(b), states in relevant part:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis thereof, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence, on any issue of fact raised by the response....
In State v. Shelton, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court discussed *141 the state's burden of proof in a habitual offender proceeding as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
A constitutionally valid guilty plea requires an express and knowing waiver of the accused's right to trial by jury, his right to confront his accusers, and his privilege against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Santiago, 416 So.2d 524 (La.1982); State v. Nabors, 569 So.2d 255 (La.App. 2nd Cir.1990). An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. Boykin, supra; State v. Morrison, 599 So.2d 455 (La.App. 2nd Cir.1992). Nor can the trial court rely on an assumption that defense counsel adequately informed the defendant of his rights. State v. Williams, 384 So.2d 779 (La.1980); State v. Morrison, supra.
Furthermore, the Louisiana Supreme Court has held a general waiver of the right to trial insufficient to show that a defendant has waived his right to trial by jury. State v. Santiago, supra; State v. McHenry, 573 So.2d 590 (La.App. 2nd Cir. 1991). The record must affirmatively show that a defendant was either advised of his right to a trial by jury or that he waived that right. State v. Age, 417 So.2d 1183 (La.1981); State v. Santiago, supra; State v. McHenry, supra.
In the instant case, the defendant filed a motion to quash the bill of information charging him as a fifth felony offender. In the motion to quash, the defendant asserted that the 1986 guilty plea to the crime of forgery was not valid due to the fact the record of the plea did not indicate that he was advised of his right to a jury trial. The defendant raised the same issue with regard to the 1987 guilty plea to simple burglary. At the hearing on the motion to quash, defense counsel argued both issues before the trial court. The trial court determined that the minutes reflected that the defendant was represented by counsel, advised of his rights, and voluntarily pled guilty to the prior felony crimes. We find that the trial court erred in this determination. The minute entries reflect only that the defendant was advised of his "right to trial." Under our jurisprudence, this reference is not sufficient to show that the defendant was adequately advised of the right to a jury trial or that the defendant waived the right to a jury trial.
Recently, this court in State v. Kunzman, 31,976 (La.App. 2nd Cir. 5/5/99), 741 So.2d 112, addressed the same issue presented here and determined that a guilty plea in a predicate offense could not be used as the basis for an habitual offender charge where the defendant was not advised of his right to a trial by jury. We remanded the matter for resentencing after *142 determining that the defendant met his burden required by La. R.S. 15:529.1(D)(1)(b) and that because the "imperfect" transcript was already in evidence, the state would be unable to rebut the defendant's proof. Kunzman, supra. Here, while the defendant has shown that his guilty pleas in 1986 and 1987 appear to have been improper, the state has not been afforded an opportunity to rebut the defendant's proof by introducing a "perfect" transcript or other evidence as described in Shelton, supra. We therefore vacate both the judgment adjudicating the defendant a fourth felony offender and the sentence imposed by the trial court and remand for further proceedings. This resolution pretermits discussion of the remaining assignment of error regarding excessiveness of the sentence.

CONCLUSION
For the reasons discussed, we affirm the defendant's conviction, but vacate both the judgment adjudicating him a fourth felony offender and the life sentence imposed by the trial court. The matter is remanded for further proceedings.
AFFIRMED IN PART; VACATED IN PART AND REMANDED IN PART.