996 So.2d 306 (2008)
STATE of Louisiana, Appellee
v.
Forrenski Laron MORRIS, Appellant.
No. 43,522-KA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
*308 William C. Monroe, for Appellant.
Paul J. Carmouche, District Attorney, Brian H. Barber, Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
Defendant, Forrenski Laron Morris, was charged with one count of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Morris opted for a bench trial, and the court found him guilty. The state charged Morris as a second felony offender based upon a different prior felony than the crime underlying his firearm conviction, and Morris admitted that he was a second felony offender. The court sentenced Morris to serve 12 years imprisonment at hard labor, consecutive to a sentence for another unrelated crime. Morris now appeals, raising two assignments of error. We affirm Morris's conviction and sentence, and amend the sentence to disqualify Morris from parole eligibility.

FACTS
On January 19, 2006, agents with the Caddo Parish Sheriff's Office (CPSO) were conducting surveillance and patrols around a home on Ashton Street in Shreveport. Just before 11:00 p.m., Agent Gary Bailey observed a 1993 Buick Roadmaster leave the home. As Bailey followed the vehicle in his patrol car to Ford Street, he noticed there were two men occupying the front driver and passenger seats. The car crossed the center line of the road several times. Suspecting that the driver was intoxicated, Bailey activated his emergency lights. Bailey said the car did not stop immediately. He testified that:
[O]nce I activated my lights, there was a lot of movement in the vehicle. [Morris] was kind of leaning forward and back and gettingI don't know if they were just nervous or whether they were trying to hide something.
Despite this activity by the two men, Bailey could not tell if the men were reaching into the back of the car. After Morris stopped the car, he got out and walked to the rear bumper as Bailey approached him. Agent Bailey smelled marijuana and obtained Morris' consent to search the car. Another CPSO agent, Darien Marshall, arrived on the scene and ran a check on the car, which records showed to be registered to Morris. Shreveport Police Officer Ben Raymond also came to the scene and watched Morris and the passenger while Bailey conducted the search.
As he searched the car, Bailey examined the rear seat and noticed that a portion of the rear seat was broken, allowing a part of the seat to be raised. Agent Bailey saw "a lot of junk under there" and noticed that the area under the seat was dirty. As he searched this area to the driver's side of the center of the back seat, Agent Bailey discovered a loaded handgun. Bailey testified that the handgun looked as though it had been recently placed there because there was no dirt on it. Both Bailey and Raymond said that either of the occupants of the car could have reached the firearm or put the firearm in the place where it was found. Neither Morris nor his passenger admitted that the gun was his. No fingerprints were taken from the gun. Because a criminal history check had *309 revealed that Morris was a convicted felon, Bailey arrested Morris for possession of a firearm by a convicted felon.
On March 1, 2006, the state charged Morris with a violation of La. R.S. 14:95.1, alleging that Morris had a prior conviction in 1998 in the 1st JDC for possession of Schedule I narcotics with intent to distribute. The case was assigned to Judge Michael Walker, and Morris, with retained counsel, pled not guilty. The minutes of court reflect that the case was continued seven times until July 17, 2007, when the case was set for trial on October 4, 2007.
On October 4, 2007, Judge Roy Brun was sitting for Judge Walker, who was on a leave of absence. The trial commenced with a statement by Judge Brun that the state had charged Morris with five charges and an additional two charges are due for further proceedings. Morris' attorney made an oral motion for a continuance on two of the other charges (trial court Nos. 248,477 and 256,169, the latter being a third possession of marijuana charge), when the prosecutor announced that he wished to proceed with No. 256,169, and, with time permitting, No. 249,243, which is the instant case. Morris' counsel again asked for a continuance, stating that he did not have witnesses prepared for the marijuana charge and that, of the other charges, he did not know which charge was going to trial so he needed time to get witnesses together.
Judge Brun denied the continuance, stating that the cases had all been set for trial by agreement on that date. Morris's counsel replied that Judge Walker's practice had been to try only one trial per day. The court repeated that the cases had all been set for trial on that date by agreement, and over defense objection, proceeded with the trial on the firearm charge.
In addition to the witnesses discussed above, the court also admitted into evidence the firearm and ammunition (Exhibit S-1) and the bill of information and minutes of court from Morris' 1998 drug conviction in the 1st JDC. Exhibit S-2.
Morris testified on his own behalf. He said that the firearm did not belong to him, and he had no knowledge that the firearm was inside his car. He stated Agent Bailey actually found the gun "up under the back seat on the passenger side of the car" rather than nearer the driver's side. Referring to the broken rear seat, Morris said that "they" (meaning the agents) "must have pulled [the seat] like that. It wasn't like that.... My seat was bolted down."
After considering all of the evidence, the court concluded that Morris was guilty of possession of a firearm by a convicted felon.
Later that same day, Morris pled guilty to the pending marijuana charge in exchange for an agreed-upon eight and one-half year hard labor sentence.
Subsequently, on October 19, 2007, Morris appeared and pled guilty to the second felony offender bill on the firearm charge; that bill was based on a 2000 conviction in the 26th JDC for possession of Schedule II narcotics. During the plea, the following exchange occurred:
Court: All right. Mr. Barber [the prosecutor], what is the exposure on the multibill?
Prosecutor: The exposure for this one is thirty. The original was ten to fifteen with one prior the state is alleging. It is double the maximum which brings it up to thirty.
Court: All right. Do you understand that's your exposure? (Whereupon a discussion off the record between defense counsel and defendant was held.)
Defendant: Yes, sir.
*310 Neither side asked for a pre-sentence investigation, and without giving further reasons the court imposed a sentence of 12 years imprisonment at hard labor, consecutive to the marijuana sentence, and ordered that costs be paid through inmate banking. The court did not advise the defendant about the prescriptive period for post-conviction relief. The defendant now appeals, urging two assignments of error.

DISCUSSION
By his first assignment of error, Morris contends that the evidence was insufficient to convict the defendant of possession of a firearm by a convicted felon.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La.App. 2 Cir. 8/15/07), 963 So.2d 497; State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. As this court stated in State v. Evans, 29,675 (La.App. 2 Cir. 9/24/97), 700 So.2d 1039, writ denied, 97-2942 (La.1/9/98), 705 So.2d 1121:
Where circumstantial evidence is used to prove execution of the offense, assuming every fact to be proved that the *311 evidence tends to prove, every reasonable hypothesis of innocence must be excluded to convict. La. R.S. 15:438; State v. Cummings, [95-1132 (La.2/28/96), 668 So.2d 1132]. This evidentiary rule restrains the factfinder in the first instance, and the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Young, 618 So.2d 1149 (La.App. 2 Cir. 1993). Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. Id. The circumstantial evidence rule is not a more demanding standard of review than the standard enunciated in Jackson v. Virginia, but is a useful methodology for its application by an appellate court upon review of cases that hinge on circumstantial evidence. State v. Bailey, 511 So.2d 1248 (La.App. 2 Cir. 1987), writ denied, 519 So.2d 132 ( [La.]1988). Nor are the two standards of review completely separate. All evidence, both direct and circumstantial, must be sufficient under Jackson v. Virginia to satisfy to a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Cummings, supra.

To convict a defendant of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Evans, supra. Again, as this court stated in Evans:
Constructive possession is sufficient to satisfy the possession element of La. R.S. 14:95.1; State v. Day, 410 So.2d 741 (La.1982); State v. Wesley, 28,941 (La. App. 2 Cir. 12/13/96), 685 So.2d 1169. Constructive possession occurs when the firearm is subject to a defendant's dominion and control. State v. Wesley, supra. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. Id. Mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession. State v. Fisher, 94-2255 (La.App. 1 Cir. 12/15/95), 669 So.2d 460, writ denied, 96-0958 (La.9/20/96), 679 So.2d 432. In addition, jurisprudence has added another aspect to the offense of La. R.S. 14:95.1awareness. In other words, the state must prove that the offender was aware that a firearm is in his presence and that he had the general criminal intent to possess the weapon, i.e., a knowing or intentional possession is necessary for a violation of La. R.S. 14:95.1. State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95), 654 So.2d 809, writ denied, 95-1252 (La.6/30/95), 657 So.2d 1035, and citations therein. The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Trahan, 425 So.2d 1222 (La.1983).
Guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. State v. Chatman, 43,184 (La.App. 2 Cir. 4/30/08), 981 So.2d 260. See also State v. Johnson, XXXX-XXXX (La.4/14/04), 870 So.2d 995.
In the instant case, the court heard evidence that the defendant owned the vehicle he was driving when he was stopped and heard conflicting evidence regarding the condition of the rear seat. The defendant said that his rear seat was bolted *312 down at the time of the stop and speculated that Agent Bailey must have broken the seat during the search of the vehicle. To the contrary, Agent Bailey said that the seat was broken at the commencement of the search and that the area under the seat contained a variety of dirty items, suggesting that these items had been in that place for sometime. The court judged Agent Bailey to be more credible than the defendant, a judgment that is fully supported by the record. The agent's observations about the condition and items stored under the back seat of the defendant's car show that the defendant knew that there was a partially obscured spot under his car's rear seat where contraband could be hidden.
The agent also testified that unlike the other items under the seat, the gun was not dirty, which infers that the gun was recently placed there. Further, the agent testified that he found the gun near the center of the back seat closer to the driver's side of that seat. This is directly in contradiction to the defendant's testimony that the agent found the gun on the passenger side of the back seat and shows that the defendant had at least equal opportunity to reach the weapon as did his passenger.
In summary, the defendant did not stop his car immediately after Agent Bailey activated his emergency lights; instead, the defendant kept driving while he and his passenger visibly moved about in the vehicle. Upon a search of the defendant's vehicle, the agent found the weapon in a semi-hidden location inside the passenger compartment, a location that must have been known to the defendant despite his testimony to the contrary. Unlike the other items found under the seat, the weapon was clean, suggesting that it had recently been placed there. Further, the weapon was in a position within reach of either of the occupants of the car, although it was closer to the defendant than to his passenger despite the defendant's protest to the contrary. All of this evidence together, viewed most favorably to the state, proves beyond a reasonable doubt that the defendant had control of the weapon, even if that control was only temporary and shared with his passenger.
Accordingly, this assignment of error is without merit.
By his second assignment of error, the defendant alleges that the trial court abused its discretion in failing to grant his motion for continuance in order to adequately prepare a defense for trial of five cases.
The defendant argues that he should not have been forced to go to trial on this charge because he had numerous other pending charges and was not prepared to proceed on any one of these charges in particular.
La. C. Cr. P. art. 707 reads:
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
Only under extenuating circumstances is an oral motion sufficient. State v. Owens, supra. The grant or denial of a motion for continuance or a motion for recess is within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a showing of abuse and specific prejudice. La. C. Cr. P. art. 712; *313 State v. Martin, XXXX-XXXX (La.10/17/94), 645 So.2d 190.
Although it may have been the usual practice in Judge Walker's court to try only one trial per day, it also appears that the defendant sought continuance of all of the cases until the court fixed the cases individually for trial. However, the court's scheduling order, insofar as it can be determined from this record, fixed all of the cases for trial on October 4, 2007, and the defendant had ample opportunity before that date to request that the cases be tried in a serial fashion. Moreover, it appears that the defendant had not issued subpoenas to any witnesses in the instant matter or any of the other matters, see La. C. Cr. P. art. 709, nor was it apparent that any such witnesses exist in the instant matter given the Fifth Amendment concerns for the passenger's testimony. Finally, it appears that the case had previously been continued at least seven times, and the trial was conducted more than a year after the bill of information was filed. Because the court was correct to deny a continuance under the circumstances, and because the defendant was in no way prejudiced by the ruling, this assignment of error is without merit.

Error Patent
As noted, the court sentenced Morris to serve 12 years imprisonment at hard labor; the court did not impose the sentence without parole or levy a fine.
At the time of this offense, La. R.S. 14:95.1 provided, in part:
B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.
La. R.S. 15:529.1 provided, in part:
A.(1)(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;....
G. Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.
La. R.S. 15:529.1 does not require the imposition of a fine, but only provides for enhanced sentences relating to the term of imprisonment, so the absence of a fine (required by the penalty provision for the underlying statute) is not an error. State v. Dickerson, 584 So.2d 1140 (La.1991); State v. Jetton, 32,893 (La.App. 2 Cir. 4/5/00), 756 So.2d 1206, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 299.
Habitual offender enhancement of a sentence for a person convicted of violating La. R.S. 14:95.1 is permissible when the prior conviction that underlies the habitual offender enhancement is a different offense from the offense underlying the felon-in-possession conviction. State v. Baker, 2006-2175 (La.10/16/07), 970 So.2d 948. Under the habitual offender statute, the correct sentencing range for the defendant was thus a minimum of seven and one-half years imprisonment at hard labor and a maximum of thirty years imprisonment at hard labor.
At the habitual offender hearing, the prosecutor stated that the defendant's sentencing exposure under the statute of conviction was "ten to fifteen" and that his enhanced exposure was "up [to] thirty," *314 thus failing to state that there was a minimum sentence under the habitual offender law or that the sentence had to be served without benefit of parole. After the defendant pled guilty, the district court did not impose the disability against parole. However, because the underlying offense carried a disability against parole, the habitual offender sentence is to likewise be imposed without parole. State v. Davenport, 43,189 (La.App. 2 Cir. 3/19/08), 978 So.2d 1189; State v. Thomas, 42,322 (La. App. 2 Cir. 8/15/07), 962 So.2d 1119. Moreover, when a district court fails to order service of sentence without benefits in a case in which a determinate time period to be so served is mandated by the statute of conviction, the sentence will automatically be served without benefits for the required time period. La. R.S. 15:301.1; State v. Braziel, 42,668 (La.App. 2 Cir. 10/24/07), 968 So.2d 853. Thus, the defendant must serve his sentence without benefit of parole.
Additionally, the trial court accepted Morris' guilty plea to the habitual offender bill without notifying Morris of the minimum sentence that must be imposed. The record reflects an unrecorded conference between the defendant and his attorney before the defendant told the trial judge that he understood the penalty he faced by pleading guilty to the habitual offender bill. This record does not reflect that there was a sentencing agreement. Advice with respect to the defendant's sentencing exposure may facilitate the taking of a voluntary guilty plea, see State ex rel. LaFleur v. Donnelly, 416 So.2d 82, 84 (La.1982); La. C. Cr. P. art. 556.1(A)(1) (regarding pleas to the underlying offense), and unless the absence of advice impacts one of the Boykin rights, it is subject to harmless error analysis. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. Since Morris's 12-year sentence is in the mid-range for an unenhanced felon-with-a-firearm conviction, and Morris has not complained about his habitual offender adjudication or his sentence, on this record, his sentence was reasonable.
Finally, the trial court also did not advise the defendant of the time period within which to apply for post-conviction relief. The Louisiana Supreme Court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189, abrogated on other grounds in State ex rel. Olivieri v. State, XXXX-XXXX (La.2/21/01), 779 So.2d 735; State v. Hunter, 36,692 (La.App. 2 Cir. 12/20/02), 834 So.2d 6. The trial court should have advised defendant of the time limitation for post-conviction relief applications. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and amend his sentence to disqualify Morris from parole eligibility, and as amended, the sentence is affirmed. Furthermore, by this opinion, defendant is notified that he has two years from the finality of his conviction to apply for post-conviction relief.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.